UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICK MCNEIL,

    *Plaintiff*,

v.

JEFFREY DUNCAN, *et al.*,

    *Defendants.*

Civil Action No. 19-694 (RDM)

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Patrick McNeil is a former employee of BAE Systems Corporation ("BAE"), a defense contractor, which, along with JRC Systems, Inc. ("JRC"), provided engineering and cybersecurity services to the Department of the Navy's Strategic Systems Program ("SSP"). Dkt. 1-1 at 6–7, 23 (Compl. ¶¶ 24, 26, 29, 97); Dkt. 11 at 6. McNeil brought this action in the Superior Court against one former employee and one current employee of the Department of the Navy and against two JRC employees, asserting claims for (i) tortious interference of a business relationship, (ii) intentional infliction of emotional distress, and (iii) defamation. Dkt. 1-1 at 6–24 (Compl. ¶¶ 23–107). He alleges that he is the victim of "an ongoing campaign of misleading and outright false reports to federal agencies," to BAE, and "to various [N]avy and contractor person[nel]," *id.* at 2 (Compl. Preamble), resulting in his termination from BAE in September 2017, *id.* at 12 (Compl. ¶ 48).

On March 12, 2019, the United States certified pursuant to 28 U.S.C. § 2679(d) that the former and current federal employees, Tony Benedict and Karon Joyner-Bowser, "were acting within the scope of their employment as deemed employees of the United States Department of Navy at the time of the alleged incidents," Dkt. 1-2 at 2, and, as a result, the United States has

substituted itself as the party defendant in place of Benedict and Joyner-Bowser, *see id.*; 28 U.S.C. § 2679(d). That same day, the United States removed the action to this Court, Dkt. 1, and it now moves to dismiss the claims brought against it, arguing that the Court lacks subject-matter jurisdiction and that McNeil has failed to state a claim, Dkt. 7 at 1. The two defendants employed by JRC, Jefferey Duncan and Marco D'Eredita, also move to dismiss, arguing that they "are entitled to absolute immunity" for reporting information to the Navy relating to McNeil's security clearance and that, in any event, McNeil fails to state a claim upon which relief can be granted. Dkt. 11 at 1.

For the reasons explained below, the Court will **GRANT** the United States' motion to dismiss for lack of jurisdiction, will **DENY** without prejudice Duncan and D'Eredita's motion to dismiss, and will **ORDER** that the parties show cause why McNeil's claims against Duncan and D'Eredita should not be dismissed or remanded to the Superior Court for lack of federal jurisdiction.

## I. BACKGROUND

Unless otherwise indicated, the following facts are derived from McNeil's complaint and, for the purposes of the United States' motion to dismiss, are taken as true.[1] *See, e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) ("At this stage of the litigation, we must accept petitioner's allegations as true.").

McNeil is a former employee of BAE. Dkt. 1-1 at 6 (Compl. ¶ 24). At the time of his employment, BAE provided cybersecurity services to the Navy's Strategic Systems Program. *Id.* at 6, 23 (Compl. ¶¶ 26, 97); Dkt. 11 at 6. McNeil served as an information and technology

---

[1] Because McNeil's *pro se* complaint is often difficult to comprehend, the Court has, at times, relied on other materials in the record which clarify his allegations.

2

manager "tasked to work with" JRC on the SSP. Dkt. 1-1 at 7 (Compl. ¶ 29); *id.* at 23 (Compl. ¶ 97). JRC employed McNeil's now ex-wife, DeAnna Rhodes. *Id.* at 17 (Compl. ¶ 75).

Although not a model of clarity, McNeil's complaint focuses on a series of events that led BAE to terminate his employment. He brings claims against Vice Admiral Terry Benedict, SSP's then-director, Dkt. 1-1 at 3 (Compl. ¶¶ 6–7); Dkt 1-2 at 3 (Berman Decl.), and Karon Joyce-Bowser, the SSP Security Manager, Dkt. 1-1 at 4 (Compl. ¶¶ 9–10); Dkt. 1-2 at 4 (Poletis Decl.). McNeil also brings claims against two JRC employees, Jefferey Duncan, the Vice President of Systems Integration, and Marco D'Eredita, the Director of Facilities and Security. Dkt. 1-1 at 3 (Compl. ¶¶ 3–5); Dkt. 11 at 7. McNeil alleges that: (i) Duncan and D'Eredita banned McNeil from JRC facilities, thereby impairing his ability to perform his duties for BAE; (ii) D'Eredita contacted "the Navy and BAE in attempts to harm" his employment; and (iii) Duncan "supported the posting [of] immoral photos of" McNeil's wife "in an effort to cause [McNeil] emotional distress."[2] Dkt. 1-1 at 7, 9, 18 (Compl. ¶¶ 29, 36, 76).

McNeil's claims against the United States focus on two events. The first incident occurred after Duncan "supported the posting" of "immoral photos" of McNeil's wife on FetLife, a social networking website that serves people interested in the "BDSM" community.[3] Dkt. 1-1 at 5, 18 (Compl. ¶¶ 20, 76). Following the publication of those photos, McNeil made a post "on his webpage (autobiography)" that "out[ed] members of the BDSM community." Dkt.

---

[2] Although the complaint at times refers to "defendant D'Estrada," that appears to be a typographical error. *See, e.g.*, Dkt. 1-1 at 9 (Compl. ¶ 36). The Court assumes that McNeil is referring to Marco D'Eredita.

[3] BDSM "is an overarching abbreviation of bondage and discipline, dominance and submission, and sadism and masochism and refers to a physical, psychological, and sexual role-play involving power exchange between consensual participants." Nele De Neef et al., *Bondage-Discipline, Dominance-Submission and Sadomasochism (BDSM) From an Integrative Biopsychosocial Perspective: A Systematic Review*, 7 Sexual Medicine 129, 129 (2019).

1-1 at 8 (Compl. ¶ 32). Duncan, in turn, reported McNeil's post to Vice Admiral Benedict, *id.* at 10 (Compl. ¶ 39), and the Vice Admiral took "issue with" the post because it associated the Navy "with a website containing objectional activities," *id.* (Compl. ¶ 40); *see also id.* at 18 (Compl. ¶ 79) (alleging that the Vice Admiral compared the post to scandalous publicity). Seeking to "squash" McNeil's post, Vice Admiral Benedict "personally call[ed] [the] BAE Vice President and requested [McNeil's] removal . . . from his site or the program al[]together." *Id.* at 18 (Compl. ¶ 78). BAE investigated Vice Admiral Benedict's concern but concluded that McNeil had not "violat[ed] . . . any company policy," and "the matter was closed 2 days later as far as . . . BAE was concerned." *Id.* at 10 (Compl. ¶ 41). Notwithstanding that conclusion, however, the chain of events leading from the posting of the "immoral photos" to the Vice Admiral's contacting BAE "result[ed] [in] an event [being] logged against [McNeil's] security clearance" on the Joint Personnel Adjudication System ("JPAS"). *Id.* at 11 (Compl. ¶ 42).

The second incident occurred after McNeil's then-wife sought and obtained a protective order against him. *See id.* at 21–22 (Compl. ¶¶ 91, 94–95). McNeil alleges that, after that protective order was issued, D'Eredita, Duncan and Joyner-Bowser "generated and submitted a secret report to BAE security alleging [that] [McNeil] was involved in domestic matters involving an altercation (with his wife) and a protective order," *id.* at 21 (Compl. ¶ 91), and that they did so even though they "understood that the [p]rotect[ive] order . . . had no basis in law," *id.* at 22 (Compl. ¶ 94). That report, according to McNeil, "was the primary reason [he] was removed from the [N]avy [work] site in the District of Columbia." *Id.* at 11–12 (Compl. ¶ 45). McNeil alleges that as a result of all of the defendants' actions—including specific conduct by Vice Admiral Benedict and Joyner-Bowser—his "security clearance [was] suspended . . . [and] [he] was terminated from [BAE][.]" *Id.* at 12 (Compl. ¶¶ 47–48).

McNeil filed this action in the D.C. Superior Court. Dkt. 1-1. He asserts claims against all defendants for (1) tortious interference with a business relationship, *id.* at 6, and (2) intentional infliction of emotional distress, *id.* at 15, and a claim against Duncan, D'Eredita, and Joyner-Bowser for (3) defamation, *id.* at 20. The United States removed the case to this Court, Dkt. 1, and, that same day, certified pursuant to 28 U.S.C. § 2679(d) that Vice Admiral Benedict and Joyner-Bowser "were acting within the scope of their employment . . . at the time of the alleged incidents," Dkt. 1-2 at 2. The United States, accordingly, substituted itself as the party defendant in place of Vice Admiral Benedict and Joyner-Bowser. Dkt. 1 at 2; 28 U.S.C. § 2679(d). Two days later, the United States moved to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. Dkt. 7. Duncan and D'Eredita have also moved to dismiss, arguing that they are "entitled to absolute immunity" from suit for informing the Navy about issues potentially affecting McNeil's security clearance and that, in any event, the complaint does not state a claim upon which relief can be granted. Dkt. 11.

## II. LEGAL STANDARD

The United States moves to dismiss pursuant to Rule 12(b)(1). A motion to dismiss under Rule 12(b)(1) challenges the Court's jurisdiction to consider the claim and may raise a facial or factual challenge. "A facial challenge asks whether the plaintiff has pleaded facts sufficient to establish the court's jurisdiction, while a factual challenge asks the court to 'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Lemma v. Hispanic Nat'l Bar Ass'n*, No. 17-2551, 2019 WL 4043983, at *5 (D.D.C. Aug. 27, 2019) (quoting *Herbert v. Nat'l Academy of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Whether a Rule 12(b)(1) motion to dismiss for lack of jurisdiction is facial or factual, the plaintiff bears

5

the burden of establishing that the court has subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561(1992).

The United States, Duncan, and D'Eredita also move to dismiss for failure to state a claim under Rule 12(b)(6), *see* Dkt. 7 at 1; Dkt 11 at 1, which tests whether the plaintiff has alleged a cognizable legal claim. As explained below, however, before reaching the merits of that motion, the Court must determine whether it has subject matter jurisdiction over the claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

### III.  ANALYSIS

**A.    The Westfall Certification**

Because McNeil disputes that the federal employees "were acting within the scope of their employment," Dkt. 17 at 2, the Court first considers whether the United States was properly substituted as a Defendant in place of Vice Admiral Benedict and Joyner-Bowser. "When a federal employee is sued for . . . wrongful or negligent act[s], the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100-694, 102 Stat. 4563 (codified at 28 U.S.C. § 2679), commonly known as the Westfall Act, "empowers the Attorney General" or his delegee "to certify that the employee 'was acting within the scope of his office or employment at the time of the incident[s] out of which the claim[s] arose." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419–20 (1995) (quoting 28 U.S.C. § 2679(d)(1)). "Upon certification, the employee is dismissed from the action, . . . the United States is substituted as a defendant," and "[t]he case then falls under the governance of the Federal Tort Claims Act ("FTCA")," 28 U.S.C. §§ 1346, 2671–2680. *Id.*

"Although certification under the Westfall Act is conclusive for purposes of removal, 'it is *not* conclusive regarding substitution of the federal government;' rather, the substitution of the

United States and the suit's conversion into a FCTA action are subject to judicial review." *Upshaw v. United States*, 669 F. Supp. 2d 32, 40 (D.D.C. 2009) (quoting *Haddon v. United States*, 68 F.3d 1420, 1423 (D.C. Cir. 1995)). A plaintiff that seeks to challenge a Westfall certification "bears the burden of coming forward with specific facts rebutting the certification." *Stokes v. Cross*, 327 F.3d 1210, 1214 (D.C. Cir. 2003) (quoting *Lawson v. United States,* 103 F.3d 59, 60 (8th Cir.1996)). "At the motion to dismiss stage," that means that the plaintiff must "allege facts that, if true, would establish that the defendants were acting outside the scope of their employment." *Upshaw*, 669 F. Supp. 2d at 41 (citing *Stokes*, 327 F.3d at 1215). Only if a plaintiff meets that burden may he, "if necessary, attain 'limited discovery' to resolve any factual disputes over jurisdiction." *Id.* (quoting *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009)).

Here, the United States submitted a certification, supported by declarations made by Navy employees, that Vice Admiral Benedict and Joyner-Bowser "were acting within the scope of their employment" as employees of the Department "at the time of the alleged incidents." Dkt. 1-2 at 2. That certification constitutes "*prima facie* evidence" that Vice Admiral Benedict and Joyner-Bowser were "acting within the scope of [their] employment." *Upshaw*, 669 F. Supp. 2d at 40 (quoting *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006) (per curiam)). In response, McNeil argues that because these defendants tortiously interfered with his business relationship, intentionally inflicted emotional distress, and defamed him, "by definition" their actions were beyond "the scope of [their] employment." Dkt. 17 at 2. That conclusory argument, devoid of factual support, "cannot rebut the United States' prima facie evidence that the defendants were acting within the scope of their employment." *Stark v. Swift*, No. 19-1010, 2019 WL 5696875, at *3–4 (D.D.C. Nov. 4, 2019) (citing *Stokes*, 327 F.3d

7

at 1215) (rejecting a plaintiff's argument that the substitution of the United States was improper because the defendants' duties could not "include perjuring themselves").

Moreover, even viewing McNeil's complaint and other filings "through the liberal lens afforded *pro se* filings," *Fennell v. AARP*, 770 F. Supp. 2d 118, 131 (D.D.C. 2011), he has not alleged sufficient facts to rebut the Westfall certification. For the purposes of a Westfall certification, scope-of-employment questions are governed by the law of the place where the employment relationship exists or existed. *See Stokes*, 327 F.3d at 1214. Here, that is the District of Columbia, Dkt. 1-1 at 3 (Compl. ¶ 2), so D.C. law governs. Under D.C. law, an employee's conduct is within the scope of employment if it: (1) "is of the kind [the employee] is employed to perform," (2) "occurs substantially within the authorized time and space limits [of the employment]," and (3) is actuated, at least in part, by a purpose to serve the master." *Conyers v. Westphal*, 235 F. Supp. 3d 72, 77 (D.D.C. 2017) (quoting *Schecter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 427 (D.C. 2006)).[4] "The District of Columbia interprets this test broadly, such that the D.C. Circuit has characterized the test as 'akin to asking whether the defendant merely was on duty or on the job when committing the alleged tort.'" *Steele v. Meyer*, 964 F. Supp. 2d 9, 17 (D.D.C. 2013) (quoting *Harbury v. Hayden*, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008)).

All three prongs are satisfied here. First, the alleged conduct is "of the kind" Vice Admiral Benedict and Joyner-Bowser were "employed to" perform. Restatement (Second) of Agency § 228(1). "To qualify as conduct of the kind he was employed to perform, the [defendant's] actions must have either been 'of the same general nature as that authorized' or

---

[4] The test also has a fourth prong that applies in cases in which the employee intentionally used force against another. That prong has no bearing on this case.

8

'*incidental to* the conduct authorized.'" *Ballenger*, 444 F.3d at 664 (alteration and emphasis in original) (citation omitted). McNeil alleges that Vice Admiral Benedict reported McNeil's online post to BAE and to JPAS because he was concerned that the post reflected poorly on the Navy and that Bowser submitted a report to BAE and Navy officials that contained information about a protective order issued against McNeil. *See* Dkt. 1-1 at 10, 18 (Compl. ¶¶ 40, 78–79); *id.* at 21 (Compl. ¶ 91). Defendant has offered the declarations of Dean R. Berman, long-time "Counsel for SSP," and Maria Poletis, Head of the Management and Support Services in the Plans and Programs Division for SSP, which attest that these actions fell within the scope of Benedict and Joyner-Bowser's official duties. *See* Dkt. 1-2 at 3–4 (Berman Decl.); (Poletis Decl.). Indeed, McNeil's own version of the events supports this conclusion: he argues that Vice Admiral Benedict should have "pursued" disciplinary actions against Duncan and others allegedly involved in the "BDSM community," Dkt. 17 at 4, and that "Bowser *used her position* to compromise [his] security clearance," *id.* at 5 (emphasis added). McNeil does not argue that Vice Admiral Benedict and Joyner-Bowser lacked the authority to take the actions they took; he only disagrees with how they chose to exercise that authority.

Nor is the Court persuaded by McNeil's contention that the acts at issue could not have been within the scope of Vice Admiral Benedict's and Joyner-Bowser's employment because, in his view, the acts were tortious. *Id.* at 2. That argument "rests on a misunderstanding of D.C. scope-of-employment law." *Ballenger*, 444 F.3d at 664. Under D.C. law, the focus is "not on the nature of the tort," *id.* (quoting *Weinberg v. Johnson*, 518 A.2d 985, 992 (D.C. 1986), but on whether the defendant's actions were "'of the same general nature as that authorized' or '*incidental to* the conduct authorized'" by the defendant's employment, *id.* (quoting *Haddon v. United States*, 68 F.3d 1420, 1424 (D.C. Cir. 1995)). As explained above, reporting concerns

9

about the conduct of personnel working on the projects that they oversaw fell squarely within the scope of Vice Admiral Benedict and Joyner-Bowser's official duties. *See id.* (rejecting the argument that a Westfall Certification was improper because the employees' alleged defamatory statement was outside the scope of employment).

The second and third prongs of the scope-of-employment test are also satisfied. Nothing in McNeil's complaint or his other filings even suggests that Vice Admiral Benedict and Joyner-Bowser's alleged conduct occurred beyond the workplace or outside normal working hours. Nor has McNeil alleged any facts that might plausibly show that either the Vice Admiral or Joyner-Bowser was motivated solely by reasons unrelated to serving his or her employer. To the contrary, he alleges that Vice Admiral Benedict reported McNeil's conduct out of concern that it would tarnish the Navy. *See* Dkt. 1-1 at 10 (Compl. ¶ 40) (alleging that Vice Admiral Benedict "ha[d] an issue with the association of his organization with a website containing objectional activities"). As to Joyner-Bowser, McNeil has not alleged any facts suggesting that she was motivated by reasons wholly unrelated to her managerial duties. Rather, he alleges only that Joyner-Bowser knew that the protective order was "non-security related," and, as a result, that she presumably had no reason to report it to "Defense Security Service." Dkt. 17 at 5. Even if accepted as true, neither that allegation nor others like it suggest that Joyner-Bowser was motivated by any interest other than serving the Navy. Thus, even granting McNeil the benefit of all reasonable inferences, the Court concludes that his allegations do not plausibly show that Vice Admiral Benedict or Joyner-Bowser acted beyond the scope of their employment. *See Upshaw*, 669 F. Supp. 2d at 40.

Accordingly, McNeil has failed to rebut the Westfall certification, and the Court must treat the claims brought against Vice Admiral Benedict and Joyner-Bowser as an FTCA action brought against the United States. *See Haddon*, 68 F.3d at 1423.

**B.    Intentional Torts Exception to the FTCA**

Having concluded that the United States was properly substituted for Vice Admiral Benedict and Joyner-Bowser, "the suit is governed" by the FTCA and "is subject to all of the FTCA's exceptions." *Wuterich*, 562 F.3d at 380. That premise is dispositive of McNeil's claims against the United States.

The FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Richards v. United States*, 369 U.S. 1, 6 (1962). But, if a statutory exception applies, the waiver of sovereign immunity remains intact, and the Court is without jurisdiction to consider the claim. The intentional tort exception to the FTCA bars claims that "aris[e] out of . . . libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h); *see also Chien v. United States*, No. 17-2334, 2019 WL 4602119, at *9 (D.D.C. Sept. 23, 2019) (noting that the intentional tort exception includes both torts enumerated in 28 U.S.C. § 2680(h) and claims arising out of those claims). All of McNeil's claims fall within this exception.

Starting with McNeil's claim that the United States tortiously interfered with his business relationship, *see* Dkt. 1-1 at 2, "nearly every court that has addressed the issue," including the D.C. Circuit, has "held, [that] actions for tortious interference with a business [relationship] are barred as claims arising out of interference with contract rights," *Chen v. United States*, 854 F.2d 622, 628 n.2 (2d Cir. 1988) (internal quotation and citation omitted); *see also Art Metal-U.S.A.*,

11

*Inc. v. United States*, 753 F.2d 1151, 1155 n.5 (D.C. Cir. 1985) (collecting cases); *Wagdy v. Sullivan*, No. 16-2164, 2018 WL 2304785, at *2 (D.D.C. May 18, 2018) (holding that tortious interference with business relations "is a claim arising out of . . . interference with contract rights" (quoting 18 U.S.C. § 2680(h)).[5]

McNeil's claims for defamation and intentional infliction of emotional distress fare no better. The D.C. Circuit has held that defamation claims are barred by sovereign immunity because they arise out of libel or slander. *See Kugel v. United States*, 947 F.2d 1504, 1506–07 (D.C. Cir. 1991). Likewise, courts have consistently held that claims for intentional infliction of emotional distress cannot be maintained where the claim arises from an intentional tort enumerated in 28 U.S.C. § 2680(h). *See, e.g.*, *Jones v. Nat'l Council on Disability*, 66 F. Supp. 3d 94, 101 (D.D.C. 2014) (holding that emotional distress claims based on defamatory statements are barred by the intentional tort exception to the FTCA); *Upshaw*, 669 F. Supp. 2d at 44–45 (same). Again, this is just such a case. As set forth in his complaint, McNeil's claim for intentional infliction of emotional distress against the United States is premised on the same conduct that supports his claims for tortious interference with his business relationship and defamation. *See* Dkt. 1-1 at 15, 18 (Compl. ¶¶ 66, 78).

---

[5] Although the tort of intentional interference with an existing contract or economic relationship is distinct from the tort of intentional interference with a *prospective* advantage, *compare* Restatement (Second) of Torts § 766 (1979), *with* Restatement (Second) of Torts § 766B (1979), courts have treated these torts interchangeably for the purposes of the FTCA's intentional tort exception, *see Art Metal-U.S.A., Inc.*, 753 F.2d at 1155 (opining that, for the purposes of 28 U.S.C. § 2680(h), it "would be illogical" to treat interference with prospective advantage different from interference with an existing business relation); *Chen*, 854 F.2d at 628 & n.2 (analyzing a claim for "tortious interference with business relations" and observing that the claim could not be brought under the FTCA because claims for "tortious interference with business (*i.e.*, prospective advantage)" are barred as claims arising out of interference with contract rights).

In short, all of McNeil's claims against the United States are barred by the intentional tort exception to the FTCA, and, accordingly, must be dismissed for lack of jurisdiction.[6]

**C.     JRC Defendants**

This leaves McNeil's claims against Duncan and D'Eredita.  Duncan and D'Eredita move to dismiss those claims under Rule 12(b)(6), arguing that they are absolutely immune under the "contractor-to-government" reporting privilege and because, in any event, McNeil has failed to state a claim.  Dkt. 11 at 5.  Before reaching the merits of defendants' arguments, however, the Court must consider whether it has jurisdiction and must, if in doubt, raise any concerns about its subject-matter jurisdiction *sua sponte*.  *See Fort Bend Cty., Tx. v. Davis*, 139 S. Ct. 1843, 1849 (2019).  Here, the Court has jurisdictional concerns that preclude it from reaching the merits of Duncan and D'Eredita's motion to dismiss without further briefing.

To start, the Court lacks diversity jurisdiction over McNeil's claims against Duncan and D'Eredita because the parties lack "complete diversity."  *See* 28 U.S.C § 1332; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (noting that "complete diversity" exists if "the citizenship of each plaintiff is diverse from the citizenship of each defendant").  Plaintiff alleges that both he and D'Eredita are Virginia residents.  Dkt. 1-1 at 3 (Compl. ¶¶ 1, 4).

Nor can the Court exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).  Supplemental jurisdiction exits when the court has "original jurisdiction" over certain claims, and the remaining claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the

---

[6] Having reached this conclusion, the Court need not—and does not—reach the United States' alternative grounds for dismissal that (1) the Court lacks jurisdiction because McNeil failed to exhaust his administrative remedies and (2) McNeil has failed to state a claim.  *See* Dkt. 7 at 11–13.

13

United States Constitution." 28 U.S.C. § 1367(a). Here, however, the United States is immune from suit, and thus the Court never had "original jurisdiction" over the claims against the United States. Because "supplemental jurisdiction under 28 U.S.C. § 1367 must be predicated upon original subject matter jurisdiction in the district court," the Court cannot exercise supplemental jurisdiction in the absence of a jurisdictional predicate. *Kaw Nation ex rel. McCauley v. Lujan*, 378 F.3d 1139, 1142 (10th Cir. 2004); *see also* 28 U.S.C. § 1367(a) (providing that a district court may exercise supplemental jurisdiction over certain claims "in any civil action of which the [court] [has] original jurisdiction"); *Lindsay v. Gov't Emples. Ins. Co.*, 448 F.3d 416, 423 (D.C. Cir. 2006) ("[S]o long as the district court has original jurisdiction *over a single claim*, it may exercise supplemental jurisdiction over any additional claim that forms part of the same Article III case or controversy." (emphasis added)); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 935 (9th Cir. 2001) ("If there is no 'original jurisdiction,' there can be no supplemental jurisdiction either, for there is no jurisdiction to which supplemental jurisdiction can attach.").

The question whether the Court possesses federal question jurisdiction over McNeil's claims against Duncan and D'Eredita is more complicated. Those claims arise under D.C. law and thus do not, at least at first blush, fall within 28 U.S.C. § 1331. Under the "well-pleaded complaint rule" federal question jurisdiction generally "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "There is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Under this narrow exception to the well-pleaded complaint rule, federal jurisdiction is available "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

14

disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

Although this exception applies only in the rarest of cases, the Court cannot foreclose the possibility that all four conditions are satisfied here. The principal defense raised by the remaining defendants asserts that they were duty-bound as a matter of federal contract and federal law to make the reports that form the basis of McNeil's suit and that, as result, they are absolutely immune. *See* Dkt. 11 at 11–14. That defense, as the Court understands it, turns on a question of federal law—does "the public interest in efficient government outweigh[] the costs of granting" such immunity? *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1447 (4th Cir. 1996) (holding that a government contractor could not be subjected to state tort law claims based on statements it made in response to an official government investigation about the contractor's dealings with the government). Without briefing, however, the Court is not prepared to decide whether the four conditions articulated in *Grable* and *Gunn* are satisfied here.

The Court will, accordingly, deny Duncan and D'Eredita's motion to dismiss without prejudice and will order the parties to show cause why McNeil's claims against Duncan and D'Eredita should not be dismissed or remanded to the Superior Court for lack of subject-matter jurisdiction. Moreover, because the question whether the Court has subject-matter jurisdiction turns on whether the contractors' absolute immunity defense is "[]likely to implicate substantial federal interests," *see Gunn*, 568 U.S. at 262, the Court would welcome the filing of a statement of interest by the United States, *see* 28 U.S.C. § 517.

## CONCLUSION

For the foregoing reasons, the United States' motion to dismiss, Dkt. 7, is hereby **GRANTED**, Duncan and D'Eredita's motion to dismiss, Dkt. 11, is hereby **DENIED** without prejudice, and the parties are **ORDERED** to show cause on or before May 1, 2020, why McNeil's claims against Duncan and D'Eredita should not be dismissed or remanded to the Superior Court for lack of federal jurisdiction.

    **SO ORDERED**.

                                              /s/ Randolph D. Moss
                                              RANDOLPH D. MOSS
                                              United States District Judge

Date: March 31, 2020