**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| PATRICK MCNEIL |
| *Plaintiff,* |
| v. |
| JEFFREY DUNCAN, *et al.,* |
| *Defendants.* |

Civil Action No. 19-694 (RDM)

**MEMORANDUM OPINION AND ORDER**

This long-pending case has moved well beyond the case that Plaintiff Patrick McNeil brought *pro se* in D.C. Superior Court over five years ago.  Plaintiff is a former employee of BAE Systems Corporation ("BAE"), which, along with JRC Systems, Inc. ("JRC"), provided contract support to the Department of the Navy's Strategic Systems Program.  Plaintiff initially brought this action in Superior Court against one former and one current employee of the Department of the Navy—Vice Admiral Tony Benedict and Karon Joyner-Bowser—and against two JRC employees—Jeffrey Duncan and Marco D'Eredita.  The United States certified pursuant to 28 U.S.C. § 2679(d) that Benedict and Joyner-Bowser, "were acting within the scope of their employment as deemed employees of the United States Department of Navy at the time of the alleged incidents," Dkt. 1-2 at 2; substituted itself as the party defendant in place of Benedict and Joyner-Bowser, *see id.*; 28 U.S.C. § 2679(d); and removed the action to this Court, Dkt. 1.  On Defendants' motions, the Court then dismissed the United States pursuant to the international torts exception to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2680(h), but deferred ruling on Duncan and D'Eredita's motion to dismiss until it could determine whether, after having dismissed the United States, it should remand the action to the Superior Court,

dismiss the action for lack of jurisdiction, or exercise pendent jurisdiction over the remaining claims.

At that point, counsel appeared on behalf of Plaintiff.  The Court granted him leave to file an amended complaint alleging three tort claims against Duncan and D'Eredita, and, in response, Duncan and D'Eredita moved to dismiss the amended complaint.  In deciding that motion, the Court first concluded that it has subject-matter jurisdiction, notwithstanding the lack of complete diversity and the early dismissal of the claims against the United States.  Dkt. 52.  The Court then denied the motion to dismiss Plaintiff's claims for tortious inference with a business relationship and intentional infliction of emotional distress but granted Defendants' motion to dismiss his defamation claim.  *Id.*

After a failed attempt at mediation, Plaintiff sought leave to file a second amended complaint, adding two new Defendants—JRC Integrated Systems, Inc. and JRC Integrated Systems, LLC—and the Court granted that motion.  But Plaintiff then hit another bump in the road when his counsel withdrew.  Then, after a substantial delay, new counsel appeared, and the Court gave Plaintiff a final opportunity to effect service on the two new Defendants.

This, then, leads to where the case now stands.  JRC Integrated Systems, Inc. and JRC Integrated Systems, LLC have both moved to dismiss the second amended complaint on the ground that the claims that Plaintiff seeks to assert against them are time barred.  Dkt. 87; Dkt. 89.  Proceedings against Duncan and D'Eredita, meanwhile, have been on hold pending resolution of this threshold issue.

For the reasons explained below, the Court concludes that Plaintiff's claims against JRC Integrated Systems, Inc. and JRC Integrated Systems, LLC are, indeed, time barred.  The Court

will, accordingly, dismiss those claims and will direct that the remaining parties meet and confer regarding a schedule for moving this case promptly forward.

## I. BACKGROUND

For the purposes of the motion, the Court takes the allegations of fact contained in the second amended complaint as true.  *See Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 239 (D.C. Cir. 2021).

In April 2016, McNeil was married to DeAnna Rhodes, who had begun working for JRC under the supervision of Defendant Duncan, the Vice President of JRC's Systems Engineering and Integration Division.  Both McNeil and Rhodes were friends with Duncan, who they met through a BDSM[1] community the year prior.  In August 2016, Duncan assisted McNeil in obtaining a job with BAE Systems, a government contractor.  McNeil began working at BAE in October of 2016.

During this time, Rhodes maintained an extra-marital relationship with a non-party, J.C., who regularly attended JRC work trips with Rhodes.  Over the course of the summer and fall of 2016, McNeil became increasingly upset about Rhodes's affair.  On December 28, 2016, he posted online about his marriage and his views about Duncan and J.C.  Notably, his post mentioned his worksite and included explicit photos of Rhodes, which she had posted on the BDSM social network website, FetLife.  At some point between December 28, 2016, and January 4, 2017, McNeil learned he had been banned from the JRC building where Rhodes was employed, and on January 4, 2017, McNeil took down the photos from his post.  That same day,

---

[1] BDSM "is an overarching abbreviation of bondage and discipline, dominance and submission, and sadism and masochism and refers to a physical, psychological, and sexual role-play involving power exchange between consensual participants."  Nele De Neef et al., *BondageDiscipline, Dominance-Submission and Sadomasochism (BDSM) From an Integrative Biopsychosocial Perspective: A Systematic Review*, 7 Sexual Med. 129, 129 (2019).

Duncan told McNeil that his online posting made him "a problem" and that McNeil was banned from entering JRC.

Rhodes sought a preliminary protective order preventing McNeil from having any contact with her from a court in Fairfax, Virginia on January 9, 2017, which the court issued on February 27, 2017, but then dissolved on June 29, 2017. *See* Dkt 69-1 at 23–24, 31.  Rhodes also reported McNeil's online posting to local authorities.  On January 24, 2017, D'Eredita, who was serving as JRC's Director of Facilities and Security, informed McNeil by email that JRC was aware of Rhodes's protective order, and he directed that McNeil should not contact her.  Duncan and D'Eredita reported McNeil to BAE in early February of 2017, describing him as a security risk, and Joyner-Bowser submitted a report to BAE security stating that McNeil had been involved in an altercation with Rhodes.  At that time, JRC was the lead contractor for two projects—one in D.C. and one in Florida—on which McNeil performed work as a BAE employee.  Based on Duncan and D'Eredita's report, Vice Admiral Benedict contacted BAE on February 13, 2017, and demanded McNeil's removal from the D.C. worksite.  Two days later, upon learning this, McNeil deleted the reference to his workplace from his online post.

BAE conducted an investigation and determined that McNeil had not violated company policies and was not a security threat.  The company did, however, transfer McNeil away from the D.C. worksite, which prevented McNeil from fulfilling his job responsibilities.  A report was also logged in the Joint Personnel Adjudication System within the Department of Defense's personnel security clearance and access database.  On August 29, 2017, McNeil's security clearance was suspended, and his badge access was downgraded.  The next day, he was suspended from the worksite to which he had been transferred.  On September 6, 2017, BAE terminated McNeil's employment.

As noted above, Plaintiff filed this action in D.C. Superior Court on January 19, 2019, against Vice Admiral Benedict, Joyner-Bowser, Duncan, and D'Eredita.  Dkt. 1-1 (Compl.).  He asserted claims for (1) tortious interference with a business relationship, (2) intentional infliction of emotional distress, and (3) defamation.  *Id.* at 6–24.  The United States removed the action to this Court pursuant to 28 U.S.C. §§ 1346(b), 1441, 1442(a)(1), 1446, 2401(b), and 2671–80.  Dkt. 1 at 1.  The United States also certified pursuant to the Westfall Act, 28 U.S.C. § 2679(d), that Vice Admiral Benedict and Joyner-Bowser "were acting within the scope of their employment . . . at the time of the alleged incidents" and substituted itself as a party defendant in their place.  Dkt. 1-2 at 2.  The United States then moved to dismiss the claims against it for lack of jurisdiction under the FTCA, Dkt. 7, which the Court granted on March 31, 2020.  *See McNeil v. Duncan*, No. 19-cv-694, 2020 WL 1536252, at *1 (D.D.C. Mar. 31, 2020).  Defendants Duncan and D'Eredita also moved to dismiss, Dkt. 11, but the Court raised a question about its subject-matter jurisdiction to proceed without the United States as a party and, accordingly, denied their Rule 12(b)(6) motion without prejudice.  *McNeil*, 2020 WL 1536252, at *8.

After retaining counsel, Plaintiff moved for leave to file an amended complaint, Dkt. 42, which the Court granted.  Min. Entry (Apr. 14, 2021).  Plaintiff's first amended complaint named only Duncan and D'Eredita as defendants.  Dkt. 44.  Defendants Duncan and D'Eredita renewed their motion to dismiss, which the Court granted in part and denied in part.  Dkt. 52.  The Court concluded that it did have subject-matter jurisdiction over McNeil's claims against Duncan and D'Eredita and denied their motion to dismiss as to Count I (tortious interference with a business relationship) and Count II (intentional infliction of emotional distress).  *Id.* at 1–2.  The Court, however, granted their motion to dismiss as to Count III (defamation), concluding that the

5

reports made by Duncan and D'Eredita to BAE were not false or defamatory and that his

remaining allegations were insufficient to state a claim for defamation.  *Id.* at 22–24.

    At the request of the parties, the Court then stayed the case pending mediation.  *See* Dkt.

56; Dkt. 57.  After the parties were unable to reach a settlement, Min. Entry (Mar. 27, 2023),

Plaintiff sought leave to file a second amended complaint, which the Court granted, Min. Entry

(Mar. 27, 2023).  On May 12, 2023, Plaintiff filed his Second Amended Complaint, the operative

complaint, which added claims against JRC Integrated Systems, Inc. and JRC Integrated

Systems, LLC (the "JRC Defendants").  Dkt. 69.

    At that point, Plaintiff's counsel moved to withdraw, Dkt. 76, and, in response, the Court

stayed the case and instructed Plaintiff either to obtain new counsel or to inform the Court that he

would proceed *pro se*, and the Court also instructed Plaintiff to serve the JRC Defendants.  Min.

Entry (Nov. 17, 2023).  Plaintiff's new counsel appeared on January 24, 2024, and the Court

ordered McNeil promptly to effect service on the JRC Defendants.  Min. Order (Jan. 29, 2024);

Min. Order (Feb. 2, 2024).  JRC Integrated Systems, Inc. was served on January 9, 2024, *see*

Dkt. 86, and timely filed a motion to dismiss, Dkt. 87.  Defendant JRC Integrated Systems, LLC

was served on January 29, 2024, and timely filed a motion to dismiss.  Dkt. 89 at 2.  Both JRC

Defendants' motions assert the same affirmative defense, arguing the Court should dismiss the

claims against them as time barred.  Dkt. 87; Dkt. 89.

## II.  LEGAL STANDARD

    Under the Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citation omitted).  Although the statute of limitations provides an affirmative defense that is typically resolved at summary judgment or trial, *see Fragola v. Kenific Grp., Inc.*, No. 21-cv-1423, 2022 WL 1908824, at *3 (D.D.C. June 3, 2022), courts may grant motions to dismiss on statute of limitations grounds where "the complaint on its face is conclusively time barred."  *Toggas v. Wachovia Mortg., FSB*, No. 19-cv-03407, 2020 WL 3103966, at *6 (D.D.C. June 11, 2020) (internal citations omitted).

A court must consider the whole complaint, accepting factual allegations as true and construing all reasonable inferences in favor of the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  A court, however, need not "accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint."  *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013).  A court may consider "any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice."  *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III. ANALYSIS

Plaintiff's second amended complaint adds JRC Integrated Systems, Inc. and JRC Integrated Systems, LLC as defendants, alleging that they are liable for the actions of Duncan and D'Eredita under the doctrine of *respondeat superior*.  Dkt. 69 at 2 (Second Amend. Compl. ¶ 3); *see Jordan v. Medley*, 711 F.2d 211, 213 (D.C. Cir. 1983) ("The doctrine of *respondeat superior* makes an employer liable for those torts of [their] employees committed within the scope of their employment.").  They argue that the statute of limitations governing Plaintiff's common law tort claims for tortious interference with business relations and intentional infliction of emotional distress expired on (and perhaps before) September 6, 2020.  In their view, "by the

time [McNeil] was terminated from BAE on September 6, 2017 Defendants' alleged wrongdoing (allegedly reporting his website and banning him from JRC's facility) were known to [McNeil]," which means "the three-year statute of limitations on [his] claims accrued no later than September 6, 2017, and thus expired on September 6, 2020"—approximately two and a half years before Plaintiff amended his complaint to add the JRC Defendants as parties in March 2023.  Dkt. 89 at 3; *see also* Dkt. 87 at 5–6.  Plaintiff responds that his claims against the JRC Defendants are timely because (A) the statute of limitations was tolled under the D.C. Superior Court's Covid-19 emergency order; (B) his claims fall under the continuing tort doctrine; and (C) his claims relate back to his original complaint under Federal Rule of Civil Procedure 15(c).  Dkt. 92 at 3–8.

Before turning to Plaintiff's arguments, the Court pauses to note that the statute of limitations is an affirmative defense and that, as a result, a plaintiff is not required to allege facts in his complaint that anticipate and respond to a defense that the defendant has yet to raise (and could waive).  For this reason, and "because statute of limitations issues often depend on contested questions of fact," courts ordinarily "hesitate to dismiss a complaint on statute of limitations grounds." *Potts v. Howard Univ. Hosp.*, 598 F. Supp. 2d 36, 38–39 (D.D.C. 2009) (citing *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).  But where it is clear from the face of the complaint that the claims asserted are conclusively time-barred, and where the plaintiff fails to identify any potentially available basis for tolling the statute, dismissal on statute of limitations grounds is appropriate.  *Firestone*, 76 F.3d at 1209; *Doe v. Dep't of Just.*, 753 F.2d 1092, 1115 (D.C. Cir. 1985).  Here, then, the Court must consider whether the asserted time-bar is evident from the face of the complaint, whether Plaintiff has identified a basis for tolling the statute of limitations or otherwise disregarding the untimeliness of his second amended

complaint, and, if so, whether consideration of that theory requires factual development or, instead, can be resolved on the face of the complaint.

As a final introductory note, the Court briefly touches on the question of choice of law. Neither Plaintiff nor the JRC Defendants raise a choice of law argument, and both apply D.C. law. Plaintiff, moreover, alleges that he, Duncan, and D'Eredita were all employed in the District of Columbia, Dkt. 69 at 3 (Second Amend. Compl. ¶¶ 4–6), and he alleges that both of the JRC Defendants operate with a "primary place of business in the District of Columbia," *id.* (Second Amend. Compl. ¶¶ 8–9). Given these allegations, which the Court must accept as true for present purposes, and because "litigants may waive choice-of-law issues," the Court "need not challenge [the parties'] evident assumption that District of Columbia law applies." *Parker v. John Moriarty & Assocs. of Virginia*, 332 F. Supp. 3d 220, 234 n.10 (D.D.C. 2018).

A.     **Statute of Limitations Accrual & Tolling**

Plaintiff's claims for tortious interference and intentional infliction of emotional distress are governed by a three-year statute of limitations period pursuant to D.C. Code § 12-301(8). *See Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 790 (D.C. Cir. 2019) ("[C]laims for tortious interference with business relations . . . are subject to a three-year statute of limitations."); *Williams-Jefferies v. AARP*, No. 15-cv-1415, 2016 WL 3166309, at *3 (D.D.C. June 6, 2016) ("Although the [D.C.] Code does not provide a specific limitations period for IIED . . . [t]he D.C. Court of Appeals has confirmed that this three-year statute applies to IIED claims."). Although Plaintiff incorrectly invokes a different statute of limitation, D.C. Code § 12-301(3), which is reserved for "the recovery of damages for an injury to real or personal property," *id.*, that misstep is inconsequential, since under § 12-301(3) the statute of limitations is also three years, *id.*

"[T]he statute of limitations for a tort claim starts to run when the plaintiff is injured."

*Capitol Servs. Mgmt., Inc.*, 933 F.3d at 790.  D.C. courts follow the "discovery rule," which

"postpone[s] the running of a statute of limitations until the plaintiff 'knows or by the exercise of

reasonable diligence should know: (1) of the injury; (2) the injury's cause in fact; and (3) of

some evidence of wrongdoing.'"  *Id.* at 791.  A "plaintiff does not have *carte blanche* to defer

legal action indefinitely if []he knows or should know that []he may have suffered injury and that

the defendant may have caused h[im] harm."  *Beard v. Edmondson & Gallagher*, 790 A.2d 541,

546 (D.C. 2002) (internal quotation marks and citation omitted).  The Court agrees with the JRC

Defendants that Plaintiff's claims accrued no later than September 6, 2017, when he was

terminated by his employer, although they may have accrued before then.  *See* Dkt. 87 at 6; Dkt.

89 at 3.  Plaintiff does not dispute that, at the time that he was terminated in September 2017, he

was aware of Duncan and D'Eredita's role in reporting his online post, which arguably led to the

revocation of Plaintiff's security clearance and his subsequent termination.  *See, e.g.*, Dkt. 69 at

8–10 (Second Amend. Compl. ¶¶ 37–39, 41, 43, 45, 49).  Plaintiff's claims—including any

*respondeat superior* claims based on those individuals' actions—accordingly, accrued on

September 6, 2017, at the latest, and they became untimely on September 6, 2020, *see* D.C. Code

§ 12-301(8).

In response, Plaintiff argues that his claims "were tolled during the Covid-19 Pandemic"

pursuant to a series of orders first issued by the Chief Judge of the D.C. Superior Court on March

19, 2020.  Dkt. 92 at 4.  The March 19, 2020 order provided as follows:  "Unless otherwise

ordered by the court, all deadlines and time limits in statutes, court rules, and standing and other

orders issued by the court that would otherwise expire before May 15, 2020 including statutes of

limitations, are suspended, tolled, and extended during the period of the current emergency."

Dkt. 92-1 at 6.  Although the parties dispute when the tolling period ended, they agree that subsequent orders extended this period of tolling until at least March 30, 2021.  *Id.* at 10.

Relying on a July 29, 2022 order issued by the Chief Judge of the Superior Court, Plaintiff maintains that the tolling period extended until June 10, 2022.  Dkt. 96-1 at 28.  In that order, the Chief Judge wrote:  "Except as specified in this order, suspension, tolling, and extension ends on June 10, 2022," and further ordered that "[s]tatutes of limitations on claims subject to a statutory moratorium during a public health emergency are suspended, tolled, and extended during the period of the statutory moratorium."  *Id.* at 28–29.  The JRC Defendants counter that the statute of limitations was tolled only until March 31, 2021, Dkt. 95 at 2, when the Chief Judge issued an order declaring as follows:

> Unless otherwise ordered by the Court, no deadlines and time limits in statutes (including statute of limitations), court rules, and standing and other orders issued by the Court are suspended, tolled or extended during the period of emergency, with the following exceptions: (1) statutes of limitations on claims subject to a statutory moratorium during a public health emergency are suspended, tolled and extended until the moratorium ends; and (2) the time limits concerning the validity and issuance of writs of restitution . . . that would otherwise expire during the period of emergency are suspended, tolled and extended during the period of emergency.

Dkt. 96-1 at 4.  Notably, the first exception set forth in the Chief Judge's March 31, 2021 order—for tolling during "a statutory moratorium," *id.*—parallels the language that Plaintiff relies upon in the July 31, 2022 order, which continues to toll "[s]tatutes of limitations on claims subject to a statutory moratorium during a public health emergency," *id.* at 29.

Although all agree that the relevant orders are not the picture of clarity, the debate between the parties has been cut short by an intervening decision from the D.C. Court of Appeals, which is dispositive on this question of D.C. law.  *See Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177 (1940) ("The highest state court is the final authority on state law."); *cf.*

*Steorts v. Am. Airlines, Inc.*, 647 F.2d 194, 196–97 (D.C. Cir. 1981) (federal courts are bound by

forum state's law regarding statutes of limitations).  In *Tovar v. Regan Zambri Long, PLLC*, the

D.C. Court of Appeals addressed the Chief Judge's March 19, 2020 order, which was entered "in

response to the COVID-19 pandemic," and the "series of subsequent amendments" which

extended the period of tolling.  ___ A.3d ___, ___, 2024 WL 4229879, at *10 (D.C. June 27,

2024).  In doing so, the Court of Appeals agreed with the JRC Defendants' reading of the orders,

holding: "we conclude [that] the tolling period for civil cases ran from March 18, 2020, to March

31, 2021."  *Id.*

Plaintiff does not dispute that the D.C. Court of Appeals reached this conclusion, nor

does he argue that the conclusion was *dicta*.  Instead, he merely asserts that the judges on the

D.C. Court of Appeals were "incorrect in their review" and that tolling extended for much

longer.  *See* Dkt. 96 at 2.  He argues, for example, that the D.C. Court of Appeals ignored the

Chief Judge's directive that "'[s]uspension, tolling, and extension will continue . . . until at least

May 20, 2021.'"  Dkt. 96 at 2.  But in pressing that argument he uses ellipses to drop an

important qualifier—"to the extent specified in this Order"—which precedes the Chief Judge's

declaration that only a small subset of civil actions (those set forth in the two exceptions quoted

above) will remain tolled.  But none of that matters, because the D.C. Court of Appeals' reading

of the Chief Judge's orders is dispositive, and this Court is not free to start from scratch in

resolving a question of D.C. law that the highest court in the jurisdiction has already resolved.

Assuming that Plaintiff's claims accrued on September 6, 2017[2] (when he was terminated

from his job at BAE), the statute of limitations would have expired on September 6, 2020,

---

[2] In their consolidated reply, the JRC Defendants shift their position to argue that Plaintiff's
claims accrued in February 2017 when Duncan and D'Eredita reported his online posting as a

subject to any period of tolling.  And, even if the Court then tolls the statute of limitations from

March 18, 2020, until March 31, 2021—which would arguably extend that deadline by 378 days

(or until September 20, 2021)—his claims against the JRC Defendants remain untimely, since

they were not added as parties in this matter until May 12, 2023.  Dkt. 69 at 3 (Second Amend.

Compl. ¶ 7).  Because Plaintiff's claims against the JRC Defendants are untimely—even

accounting for the emergency order's tolling—those claims are time-barred.

## B.      Continuous Tort Claim

Plaintiff's second argument—that his claims against the JRC Defendants are "not static

claims, but rather ongoing" claims under the continuing tort doctrine—fares no better.  Dkt. 92 at

5–6.  In "the District of Columbia, the continuing tort doctrine requires a plaintiff to allege '(1) a

continuous and repetitious wrong, (2) with damages flowing from the act as a whole rather than

from each individual act, and (3) at least one injurious act within the limitation period.'"  *Morton*

*v. D.C. Hous. Auth.,* 720 F. Supp. 2d 1, 7 (D.D.C. 2010) (quoting *Beard*, 790 A.2d at 547–48).

The continuous tort doctrine "applies *only* to acts which are by nature of a repetitive character

and for which *no single act can be identified* as the cause of significant harm."  *Pope v. Bond*,

641 F. Supp. 489, 496 (D.D.C. 1986) (emphasis added).

The continuous tort doctrine does not apply here.  Plaintiff alleges injuries from discrete

acts: the reporting of his website, his removal from his worksite, the removal of his security

clearance, and his termination.  He argues that his claims are continuing torts because he

continues to experience harm from the defendants' acts.  *See* Dkt. 92 at 5 (arguing that

---

security risk and he was removed from the D.C. worksite.  Dkt. 94 at 3.  Using this accrual date,
the statute of limitations would have expired in February 2020, prior to the Covid-19 emergency
order.  For purposes of this motion, however, the Court assumes without deciding that the claims
accrued on the later date of September 6, 2017.

suspending his security clearance continues to harm his career in defense consulting); *Id.* at 6 (arguing that the mental health effects of the IIED continue). In any termination case, the plaintiff may continue to feel the effects of their termination. That does not transform it into a continuing tort. The continuing tort doctrine applies only where the defendant's wrongful *acts* are of a continuous nature, not where the *effects* of such acts continue to be felt. *See Beard*, 790 A.2d at 548 (explaining that the continuous tort doctrine applies where the "wrongfulness and injuriousness of tortious activity may be discernible only from the continuation over time of a course of conduct").

The continuous tort doctrine, accordingly, is inapplicable and cannot extend the relevant statute of limitations.

## C.      Joinder and Relation Back

Finally, Plaintiff invokes Federal Rules of Civil Procedure 15(c), 20, and 21 to argue that his claims against the JRC Defendants relate back to his filing of claims against the other defendants in this case. To start, whether the joinder rules permitted Plaintiff to add claims against the JRC Defendants, *see* Fed. R. Civ. P. 20 & 21, has no bearing on whether those claims are timely. The question, instead, is addressed by Rule 15(c)(1), which provides as follows:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> > (A)      the law that provides the applicable statute of limitations allows relation back;
> >
> > (B)      the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> >
> > (C)      the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the

> summons and complaint, the party to be brought in by
> amendment:
>
> (i)    received such notice of the action that it will not be
>        prejudiced in defending on the merits; and
>
> (ii)   knew or should have known that the action would have
>        been brought against it, but for a mistake concerning the
>        proper party's identity.

Fed. R. Civ. P. 15(c)(1).

According to Plaintiff, Rule 15(c)(1)(C) applies in the present context because it has been apparent over the course of the litigation that his "failure to add the JRC entities . . . [was] a result of mistake," and because the JRC Defendants "were aware or should have been aware of the conduct of [Duncan and D'Eredita] who abused their positions and authority during their employment with the JRC entities." Dkt. 92 at 7–8. Thus, as in *Rendall-Speranza v. Nassim*, 107 F.3d 913 (D.C. Cir. 1997), the question whether the Court should "excuse[] [Plaintiff's] failure to add the [JRC Defendants] until after that statute of limitations had run depends upon the meaning of 'a mistake concerning the identity of the proper party' in Rule 15(c)(3)(B)." *Id.* at 917. The *Rendall-Speranza* decision, moreover, provides the answer to that question. As the D.C. Circuit explained:

> Our understanding that an error of judgment about whether an employer is liable
> for the act of its employee is not a "mistake" within the intendment of Rule 15(c)
> is buttressed also by cases in which the court did not allow a plaintiff who had
> sued a government officer in his official capacity to add the officer as a
> defendant in his individual capacity. . . .
>
> Rendall-Speranza alleged that she was injured in her workplace by a fellow
> servant. In fact, she submitted to the IFC a Workers' Compensation Claim
> Reporting Sheet stating as much. Although Rendall-Speranza claims that she
> did not realize that the IFC might be liable for Nassim's action until the IFC filed
> its *amicus curiae* brief in his support, from her own account of the August 24,
> 1995 incident she must be deemed to have been on notice of the IFC's potential
> liability. Nothing prevented Rendall-Speranza from naming both the IFC and
> Nassim as defendants and pleading alternative theories of liability. In the

> adversarial system of litigation the plaintiff is responsible for determining who
> is liable for her injury and for doing so before the statute of limitations runs out;
> if she later discovers another possible defendant, she may not, merely by
> invoking Rule 15(c), avoid the consequences of her earlier oversight.  We hold,
> therefore, that the plaintiff's attempt belatedly to name the IFC as a defendant
> because she had earlier failed to appreciate that the IFC might be liable is not an
> amendment based upon "a mistake of identity" so as to relate back to the date of
> the original complaint.

*Id.* at 918–19.  The same analysis applies here.  Plaintiff may not have thought about suing the
JRC Defendants at the outset, and might not then have appreciated that they would come to the
litigation with deeper pockets than Duncan and D'Eredita, but that is not the type of mistake that
permits a plaintiff to take advantage of Rule 15(c)'s relation back provisions.

As the D.C. Circuit further explained in *Rendall-Speranza*, "[a] potential defendant who
has not been named in a lawsuit by the time the statute of limitations has run is entitled to
repose—unless it is or should be apparent to that person that he is the beneficiary of a mere slop
of the pen as it were." *Id.* at 918.  Or to put it differently:  "Relation back will be refused only if
the court finds that there is no reason why the party to be added should have understood that it
was not named due to a mistake."  6A Wright, Miller & Kane, *Federal Practice and Procedure*
172 (2010).  Here, however, Plaintiff discussed JRC extensively in his original complaint, *see,
e.g.*, Dkt. 1-1 at 37 (Compl. ¶ 90), and he has offered no reason to believe that he was confused
about the identity of any of the relevant players or that he intended—years ago—to bring suit
against the JRC Defendants and simply committed a drafting error.  Instead, his strategy has
evolved.  But he cannot rely on Rule 15(c) to revisit the choices he made at the outset of the
litigation where the mistake he made, if any, was one of strategy rather than identity.

Finally, and for similar reasons, the Court is unpersuaded that the JRC Defendants knew
or should have known that the original action would have been brought against them but for a
mistake.  No reasonable employer would have read Plaintiff's original complaint and thought

that he had meant to bring a *respondeat superior* claim against it based on the alleged misconduct of its employees and had simply made a mistake.  Even viewed with the benefit of hindsight, Plaintiff's decision to add the JRC Defendants four years after Plaintiff originally filed suit "cannot plausibly be construed as a case of mistaken identity."  *Jackson*, 2021 WL 1317883, at *6; *cf. Ferguson v. Loc. 689, Amalgamated Transit Union*, 626 F. Supp. 2d 55, 60 (D.D.C. 2009); *Henao v. Smiths Detection, Inc.*, No. 18-cv-2564, 2019 WL 2476631, at *3 (D.D.C. June 13, 2019).

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** JRC Defendants' motions to dismiss, Dkt. 87; Dkt. 89.  The Court further **ORDERS** that Plaintiff's counsel and counsel for Duncan and D'Eredita meet and confer and file a joint status report on or before October 25, 2024, proposing a schedule for next steps in the litigation.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  October 8, 2024